UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEHMAN XS TRUST, SERIES 2006-4N, by
U.S. BANK NATIONAL ASSOCIATION,
solely in its capacity as Trustee,

                        Plaintiff,

     - against -

GREENPOINT MORTGAGE FUNDING,
INC.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**OPINION AND ORDER**

**13 Civ. 4707 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/10/14

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Plaintiff U.S. Bank National Association (the "Trustee"), as

Trustee for Lehman XS Trust, Series 2006-4N (the "Trust"), brings this

diversity action for breach of contract against GreenPoint Mortgage

Funding, Inc. ("GreenPoint").[1]  GreenPoint moves to dismiss all claims as

time-barred.[2]  For the following reasons, GreenPoint's motion to dismiss is

---

[1]     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.  *See* Complaint ("Compl.") ¶ 12.

[2]     While the Trust also brought an indemnity claim against GreenPoint, it later stated that "Plaintiff will not oppose GreenPoint's separate motion to dismiss the contractual claim for indemnification."  Plaintiff's Reply to

granted.

## II.     BACKGROUND

Lehman Brothers Bank, FSB ("Lehman") bought groups of residential mortgage loans from GreenPoint and Countrywide Home Loans, Inc. ("Countrywide") in 2006, pursuant to a Flow Mortgage Loan Purchase and Warranties Agreement executed on December 12, 2001 (the "Purchase Agreement").[3]  Through a series of assignments, these loans were ultimately deposited into the Trust, securitized and issued in the form of certificates (the "Certificates") and sold to investors (the "Certificateholders").[4]  The Trust is collateralized by 4,001 mortgage loans with an original principal balance of over $1.3 billion, of which nearly 2,700 loans were originated by GreenPoint (the "Loans").[5]  The Trust Agreement (the "Trust Agreement") assigned the Trustee all of the right, title, and interest in the Loans for the Certificateholders' benefit, including the right to bring the present action to enforce GreenPoint's obligations

---

Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss ("Opp. Mem."), at 4 n. 3.  The contractual indemnification claim is hereby dismissed.

[3]      *See* Compl. ¶ 2.

[4]      *See id.*

[5]      *See id.* ¶ 3.

2

under the Purchase Agreement.[6]

### A.    The Purchase Agreement

#### 1.    Seller Representations

Through several representations in the Purchase Agreement, GreenPoint guaranteed the accuracy of the information that it provided regarding the credit quality and the characteristics of the Loans (the "Seller Representations").[7]  In relevant part, GreenPoint promised that the Purchase Agreement does not "contain[ ] any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading."[8]  GreenPoint also affirmed that its "decision to originate any mortgage loan . . . is an independent decision based upon [GreenPoint's] Underwriting Guidelines," and not based on the loan "Purchaser's decision to purchase, or not to purchase . . . any such mortgage loan, if originated."[9]

#### 2.    Loan Representations

GreenPoint also guaranteed several representations regarding the

---

[6]    *See* Compl. ¶ 17.

[7]    *See id.* ¶¶ 21–22.

[8]    Flow Mortgage Loan Purchase and Warranties Agreement ("Purchase Agreement"), Ex. A to Compl., § 6(h).  *See also* Compl. ¶ 22.

[9]    Purchase Agreement § 6(o).  *See also* Compl. ¶ 22.

credit quality and characteristics of the Loans (the "Loan Representations").[10]  In relevant part, GreenPoint guaranteed that it "has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations,"[11] that there is "no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note,"[12] that the "Mortgage Loan was underwritten in accordance with . . . [GreenPoint's] Underwriting Guidelines,"[13] that GreenPoint had "no knowledge of any circumstances or conditions" regarding the mortgages underlying the Loans "that can reasonably be expected to cause private investors to regard the Mortgage Loan as an unacceptable investment . . . or adversely affect the value or marketability,"[14] and that "[n]o error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person . . . ."[15]

---

[10]     See Compl. ¶ 21.

[11]     Purchase Agreement § 7(k).

[12]     Id. § 7(q).

[13]     Id. § 7(v).

[14]     Id. § 7(z).

[15]     Id. § 7(yy).

### 3.    Remedies for Breach of Representations

Section 8 states that if GreenPoint breaches a Representation, and it is determined that such breach "materially and adversely affects the value of the [loans] or the interest of the Purchaser"[16] (the "Breach"),  GreenPoint must either (i) cure the Breach or (ii) repurchase the affected loans within sixty days upon its own discovery or upon receiving written notice by the Trust.[17] If GreenPoint cannot cure the Breach within sixty days of either the Breach's discovery or written notice, the Trust can compel GreenPoint to repurchase all of the Loans.[18] Section 8(c) of the Purchase Agreement (the "Accrual Provision") stipulates the following:

> Any cause of action against the Seller relating to or arising out of the Breach of any representations and warranties made in Sections 6 and 7 shall accrue as to any Mortgage Loan upon (i) discovery of such Breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failures by the Seller to cure such Breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon the Seller by the Purchase for compliance with this Agreement.[19]

---

[16]    *Id.* § 8(b).

[17]    *See id.* § 8(c).

[18]    *See id.*

[19]    *Id.*

5

### B.     The Trust's Discovery of the Alleged Breaches of Representation

Upon reviewing a sample of the Loans in 2012, the Trust alleges that it identified at least one Breach of Representation "that had a material and adverse impact on the value of the Loans or the Certificateholders' interests therein" in approximately eighty-two percent of loans in the reviewed sample.[20]  Based on these breaches, the Trust alleges borrower fraud, violations of GreenPoint's underwriting guidelines, and violations of state and federal law.[21]

According to the Trust, its Master Servicer notified GreenPoint of the alleged Breaches of Representations that it had found during its review of the Loans.[22]  The Trustees sent notices to GreenPoint on December 18, 2012 and January 28, 2013 (the "Breach Notices"), demanding that GreenPoint repurchase the defective loans in the event it could not cure the Breaches.[23]

GreenPoint responded to the Breach Notices on February 8, 2013, stating that the Trust has not provided GreenPoint sufficient information to enable it to determine whether or not there has been a Breach.[24]  The Trust asserts that

---

[20]     Compl. ¶¶ 36–37.

[21]     *See id.* ¶¶ 37–53.

[22]     *See id.* ¶ 54.

[23]     *See id.*

[24]     *See id.* ¶ 55.

GreenPoint had no discretion to contest the Breaches, and that the sixty day "cure or repurchase" window had passed.[25]  Five months after receiving GreenPoint's response, the Trust filed this action.

## III.  APPLICABLE LAW

### A.    Statute of Limitations for Breach of Contract

The Purchase Agreement is governed by New York law.[26] Under New York law, breach of contract claims are subject to a six year statute of limitations.[27]  A breach of contract claim accrues at the time of breach, even if plaintiff does not suffer damages until a later date.[28]

CPLR § 206(a) states that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete."  "New York courts do not instinctively apply

---

[25]      *See id.* ¶ 56–57.

[26]      *See* Purchase Agreement § 18.  The New York borrowing statute would require application of New York law even if there were no choice of law provision in the Agreement because New York's statute of limitations is shorter than Ohio's, the state where the cause of action occurred.  *See* Civil Practice Law and Rules ("CPLR") § 202

[27]      *See* CPLR § 214(3).

[28]      *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

CPLR 206(a) in every case where a demand is a predicate to suit.  Rather,

they distinguish between substantive demands and procedural demands."[29]

A substantive demand is an "essential [legal] element of the

plaintiff's cause of action."[30]  In these cases, the statute of limitations does

not begin to run until demand is made and refused.[31]  By contrast, a

procedural demand is "not [a] requisite element[] of the cause of action," but

a mere procedural trigger to commence proceedings.[32]  "[W]here a demand is

necessary to entitle a person to commence an action, the time within which

the action must be commenced shall be computed from the time when the

*right to make the demand* is complete."[33]  The period "runs from the time

when the party making the demand first becomes [legally] *entitled* to make

---

[29]     *Continental Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996).

[30]     *Id.*  For example, "[d]emand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin."  *In re Peters*, 821 N.Y.S.2d 61, 65 (2006).

[31]     *See Continental Cas.*, 77 F.3d at 21.

[32]     *Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982).

[33]     *Parker v. Town of Clarkstown*, 629 N.Y.S.2d 787, 788 (2d Dep't 1995) (emphasis added).

the demand, and not from the time the actual demand is made."[34]

## IV.  DISCUSSION

### A.  The Parties' Arguments

GreenPoint argues that any alleged breach of Representations occurred in March 2006 when the Loans were deposited into the Trust and the parties entered into the Purchase Agreement.[35]  Because the Trust was entitled to make the repurchase demands at that time, the statute of limitations began running on March 2006 and expired six years later – before the Trust filed this action in July 2013.[36]  The Trustee counters that the Accrual Provision in § 8(c) of the Purchase Agreement delayed the accrual of the breach of contract claim, and in fact "*defines the breach* from which the limitations period begins to run."[37]  Under this view, the limitations period began to run in 2013, when GreenPoint refused to cure upon receipt of the Trust's Breach Notices.

GreenPoint responds that the sixty day notice-and-cure clause in the

---

[34]    *Woodlaurel, Inc. v. Wittman*, 606 N.Y.S.2d 39, 40 (2d Dep't 1993) (emphasis added).

[35]    *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss the Complaint, at 7-13.

[36]    *See id.* at 7-8.

[37]    Opp. Mem. at 3 (emphasis in original).

Accrual Provision was merely a procedural prerequisite to the filing of a suit, and that the substantive *right to demand relief* arose the moment when GreenPoint sold and deposited the allegedly non-conforming Loans into the Trust in 2006.[38] GreenPoint also argues that the Accrual Provision cannot indefinitely extend the statute of limitations, as a matter of New York state law and policy.[39]  Finally, GreenPoint denies that its failure to repurchase the Loans under the Purchase Agreement constitutes an independent breach of contract for statute of limitations purposes.[40]

### B.    The Breach of Contract Claims Accrued in March 2006

"[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused."[41]  This issue has been repeatedly addressed and resolved,[42] most recently in a case from New York's intermediate

---

[38]     *See* Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Dismiss ("Reply Mem."), at 2–3.

[39]     *See id.* at 2-6.

[40]     *See id*. at 8–10.

[41]     *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, No. 12 Civ. 8594, 2013 WL 3863861, at *10 (S.D.N.Y. July 24, 2013).

[42]     *See, e.g., Structured Mortg Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 Civ. 3232, 2003 WL 548868, at *2-3 (S.D.N.Y. 2003) ("Daiwa's false warranties

appellate court interpreting a substantially similar contractual provision in a case with substantially similar facts.[43]  In *ACE Securities v. DB Structured Producs*, a Trust purchased a pool of mortgage loans on March 1, 2006. The contract stated that "[u]pon discovery or receipt of notice of . . . any breach" that "materially or adversely affects the value of such Mortgage Loan," the Trustee had to notify the loan sponsor and request that it cure the breach.[44]  If the sponsor failed to cure within the specified time period, the contract required the Trustee to "enforce the [sponsor's] obligations to . . . repurchase" the loans.[45]  As in this case, the Trust in *ACE Securities* could not sue before three conditions were met – discovery, lapse

---

and representations breached the contract at its inception in March 1994 . . . [S]ince the facts warranted in the March 1994 Pooling Agreement were not true when made, the statute of limitations began to run at that time, and expired six years later. . . . [P]laintiffs are asking this Court to [impose] in contract cases where there is a demand requirement . . . the otherwise rejected accrual-at-injury rule. Plaintiffs' argument must be rejected."); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v. Nomura Credit & Capital,Inc.*, 39 Misc. 3d 1226(A), at *9-10 (Sup. Ct. N.Y. Co. 2013) ("If the Mortgage Representations were false when made, they are still false today. . . . The Statute of Limitations runs from the time of breach of the Mortgage Representations, not from the time plaintiff elected to make demands for repurchase.").

[43]     *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 2013 WL 6670379 (1st Dep't Dec. 19, 2013), reversing 40 Misc. 3d 562 (Sup. Ct. N.Y. Co. 2013).

[44]     Pooling and Servicing Agreement § 2.03, Ex. A to Complaint, *ACE Sec. Corp. v. DB Structured Prods., Inc.*, Index No. 650980 (Sup. Ct. N.Y. Co. 2012).

[45]     *Id.*

of cure period and demand for repurchase.  Nevertheless, the First Department held that the [breach of contract] claims accrued on the closing date of the [Mortgage Loan Purchase Agreement], when any breach of the representations and warranties contained therein occurred" not when "defendant either failed to timely cure or repurchase a defective mortgage loan."[46]

The Trust attempts to distinguish *ACE Securities* by stating that "the contract at issue in *ACE* did not contain a provision expressly stating the conditions that must be satisfied before a cause of action can *accrue*."[47]  That is true.  However parties may not contractually adopt an accrual provision that effectively extends the statute of limitations before any claims have accrued.[48]  In another case

---

[46]     *Id.* at *1 (citations omitted).  As the Second Circuit recently stated, federal courts applying state law "are not strictly bound by state intermediate appellate courts, [but] will look to their decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, No. 10 Civ. 1306, slip. op. at 6 (2d Cir. Jan. 9, 2014) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  In the absence of contrary law from the New York Court of Appeals or "persuasive data" that it would rule differently, I follow the First Department's decision in *ACE Securities*.

[47]     12/20/13 Letter from Jennifer Barrett, Counsel for Plaintiff, at 1 (emphasis added).  *Accord* Opp. Mem. at 24.

[48]     CPLR § 201 states that "a shorter time [may be] prescribed by written agreement" but courts have held that parties may not contractually waive or extend the statute of limitations indefinitely.  *See, e.g., John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551 (1979) ("If the agreement to waive or extend the Statute of Limitations is made at the inception of liability it is unenforceable

12

pertaining to mortgage loans, the Western District of Washington, applying New York law, held that parties "may not extend the accrual date of the statute of limitations simply by delaying its demand for payment [because a ] cause of action for breach of contract accrues when the party making the claim possesses a *legal right* to demand payment."[49]

## C.   The Accrual Provision Does Not Define a New Breach

The Accrual Provision does not define a new breach which triggers the running of a new limitation period.  The Purchase Agreement clearly defines "Breach" as "a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans" and provides no other definition.[50]  GreenPoint's alleged failure to comply with its cure or repurchase obligations does not give rise to a separate breach of contract at the time of refusal because "New York law . . . does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for

---

because a party cannot in advance, make a valid promise that a statute founded in public policy shall be inoperative.") (quotation marks and citations omitted); *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 431 (2d Cir. 2013) (holding that a plaintiff does not have "'power to put off the running of the Statute of Limitations indefinitely.'") (quotations omitted).

[49]     *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011) (emphasis added).

[50]     *See* Purchase Agreement §§ 8(a), 8(c); Second Reply Mem. at 2.

independent causes of action."[51]

The alleged underlying breach occurred when the Trust experienced a "material and adverse" effect.[52]  The Trust experienced such effect when GreenPoint allegedly made untrue Representations regarding the quality and characteristics of the Loans, sold the Loans and entered into the Purchase Agreement with Lehman on March 31, 2006.  The Accrual Provision is a pre-suit remedial provision that is neither an element of the breach of contract claim, nor grounds for a separate breach of contract claim.  The Trust's suit is barred under New York's six-year statute of limitations and thus untimely.

## IV.   CONCLUSION

For the foregoing reasons, GreenPoint's motion to dismiss is granted. The Clerk of Court is directed to close this motion and this case.

---

[51]   *Deutsche*, 2013 WL 3863861, at *10 (citing *Hahn Auto. Warehouse, Inc. v. American Zurich Ins. Co.*, 18 N.Y.3d 765, 770–71 (2012) and *Continental Cas. Co. v. Stronghold Ins. Co., Ltd.*, 77 F.3d 16, 21 (2d Cir.1996)).  *But see Federal Housing Finance Agency, as Conservator for the Federal Home Loan Mortgage Corporation, on behalf of the Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM4 (SABR 2006WM4) v. WMC Mortgage,LLC*, No 13 Civ. 0584, Dkt. No. 53 (S.D.N.Y. Dec. 17, 2013) (denying a loan company's motion to dismiss complaint as time-barred on the ground that plaintiff pled the loan company's failure to cure as an independent breach).

[52]   Purchase Agreement §§ 8(a), 8(c).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              January 10, 2014

## - Appearances -

*For Plaintiff:*

Jennifer J. Barrett, Esq.
Maya Daria Cater, Esq.
Philippe Zuard Selendy, Esq.
Sean Patrick Baldwin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000


*For Defendant:*

James Alwin Murphy, Esq.
Cameron S. Matheson, Esq.
Murphy & McGonigle, P.C.
4870 Sadler Road, Ste. 301
Glen Allen, VA 23060
(804) 762-5320

James K. Goldfarb, Esq.
Soren Elliot Packer, Esq.
Murphy & McGonigle, P.C.
60 East 42nd St., Ste 5230
New York, NY 10165
(212) 880-3999

Theodore R. Snyder, Esq.
Murphy & McGonigle, P.C.
One Exchange Plaza
55 Broadway, Suite 1600
New York, NY 10006
(212) 825-9811